**SO ORDERED.**

**SIGNED this 10th day of August, 2026.**



_____
Mitchell L. Herren
Chief United States Bankruptcy Judge

_____

*Designated for online publication*
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **Kelly Don Standley,** | **Case No. 25-10948** |
| **Debtor.** | **Chapter 7** |
| **Parsons Condominiums, LLC, Kansas Condos, LLC, and Central States Development, LLC,** | |
| **Plaintiffs,** | **Adv. No. 25-5123** |
| **vs.** | |
| **Kelly Don Standley,** | |
| **Defendant.** | |

### Memorandum and Order Denying
### Plaintiffs' Motion for Summary Judgment

Defendant/Debtor Kelly Don Standley seeks to discharge a 2025 default

judgment from a Kansas state court lawsuit, awarding $282,754.64 principal,

$221.53 costs, and interest to Plaintiffs Parsons Condominiums, LLC, Kansas Condos, LLC, and Central States Development, LLC.[1] In this adversary proceeding, Plaintiffs contend the judgment debt from the 2025 state court default judgment should be excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) (the fraud exception), (a)(4) (the fraud or defalcation while in a fiduciary capacity exception), and (a)(6) (the willful and malicious injury exception).[2]

Plaintiffs seek summary judgment, arguing the allegations in the state court petition were deemed admitted due to Defendant's default, and the state court judgment satisfies all the elements for an exception to discharge under §§ 523(a)(2)(A), (a)(4), and (a)(6). Defendant does not dispute that the state court entered the default judgment against him, but argues the judgment is insufficient to support an exception to discharge under any of those subsections of § 523(a).

The default judgment does not provide a sufficient basis for this Court to find at this stage, as a matter of law, that the debt is nondischargeable. Plaintiffs have not carried their burden to show the undisputed facts meet each of the elements required to prove the debt at issue is nondischargeable. Plaintiffs' motion for summary judgment[3] is therefore denied. The proceeding remains set for trial, where Plaintiffs may attempt to prove their claims as set forth in the pretrial order.

---

[1] Plaintiffs appear by Braxton Thomas Moral of Depew Gillen Rathbun & McInteer, LC. Defendant appears pro se.

[2] All future statutory references in text, unless otherwise noted, are to title 11 of the United States Code (the "Bankruptcy Code").

[3] Doc. 19 (motion), Doc. 20 (memorandum).

2

## I. Uncontroverted Material Facts

Plaintiffs' motion for summary judgment sets forth only five numbered statements of uncontroverted fact. First, as to those facts Defendant does not controvert, the parties agree Plaintiffs owned a section of housing located in Parsons, Kansas. The entity McDonald Standley Property Management Company performed property management duties, apparently for those properties. And finally, a default judgment was entered on May 28, 2025, in a Sedgwick County District Court case filed by Plaintiffs against both Defendant and "McDonald Standley Investments, LLC d/b/a McDonald Standley Property Management Company," Case No. SG-2025-CV-000274. That Journal Entry of Default Judgment entered a judgment for Plaintiffs for "$282,754.64 principal; for Plaintiffs' costs in the amount of $221.55; and for interest on the judgment at the judgment rate."[4]

Defendant controverts Plaintiffs' additional statements of uncontroverted facts because they "rely entirely on allegations in the [state court] Petition" and supporting affidavit and "were never litigated, never admitted, and never reduced to findings."[5] As Plaintiffs point out, however, the allegations made in the state court petition were deemed admitted by the defendants' failure in the state court

---

[4] Doc. 20 Ex. C p. 3.

[5] Doc. 22 p. 2. To the extent Defendant is attempting to controvert an asserted fact through a general denial, without a citation to record evidence supporting that denial, he has failed to comply with D. Kan. LBR 7056.1(c) and (b)(1), discussed in the summary judgment standards, below.

3

suit to respond.[6] In addition, a Kansas default judgment can be given preclusive

effect.[7] That said, the proper way to present the state court materials would have

been with an affidavit identifying and authenticating the court records, and that

was not done here.[8]

Regardless, the additional details from those state court materials—few

though they are—are set out here. The state court petition, filed on February 11,

---

[6] *See* Kan. Stat. Ann. § 60-208(b)(6) ("An allegation, other than one relating to the amount of damages, is admitted if a responsive pleading is required and the allegation is not denied."); Kan. Stat. Ann. § 60-255 ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the party is in default. On request and a showing that a party is entitled to a default judgment, the court must render judgment against the party in default for the remedy to which the requesting party is entitled.").

[7] *Johnson v. Creason (In re Johnson)*, No. 22-10116, Adv. No. 22-5017, 2023 WL 6851445, at *8 (Bankr. D. Kan. Oct. 16, 2023) (analyzing case law concerning collateral estoppel—issue preclusion—of Kansas default judgments and concluding: "Kansas law gives default judgments preclusive effect as a judgment on the merits, satisfying the first prong in [the collateral estoppel] analysis. The Kansas Supreme Court has held that a default judgment is as conclusive against a defendant as if the defendant had appeared and contested the claim."). Plaintiffs do not attempt to meet, or even mention, the elements required to show the applicability of issue preclusion. There is simply no analysis of preclusion principles at all.
     Likewise, Plaintiffs do not address the claim preclusive effect of the default judgment to establish the amount of the debt. Because Defendant does not dispute the debt owed, however, the Court need not address that issue further. *See Grange Ins. Assoc. v. Woods (In re Woods)*, 660 B.R. 905, 915-16 (B.A.P. 10th Cir. 2024) (noting first step of two-step process to determine whether debt is nondischargeable is establishing amount of the debt under applicable nonbankrutpcy law, and that when parties do not dispute the claim preclusive effect of a state court judgment establishing the amount of the debt, it need not be addressed).

[8] A party moving for summary judgment must properly support their motion to "allow the bankruptcy court to credibly determine" if they have met their burden. *Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 995 (B.A.P. 10th Cir. 1997) (citing Fed. R. Civ. P. 56(c); D. Kan. LBR 7056.1(a)). Under D. Kan. LBR 7056.1(d), facts must be "presented by affidavit, declaration under penalty of perjury, and/or through the use of relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions." Evidence lacking the proper foundation cannot support a summary judgment motion, even if the potential evidence appears highly probative to a material fact. *In re Harris*, 209 B.R. at 996.

4

2025, alleges the entity McDonald Standley Investments, LLC d/b/a McDonald Standley Property Management Company "was responsible for managing the property and its residents" and its "duties included collecting rent, security deposits, maintaining the property, and all other tasks typical of a property management company."[9] Plaintiffs then allege they were "unable to locate substantial funds belonging" to them and that McDonald Standley Property Management Company "refuses to produce those funds."[10] There are only two additional paragraphs in the state court petition: stating in pertinent part that upon "information and belief, Defendants have wrongfully appropriated those funds" and the second stating "Defendants' actions constitute conversion of Plaintiffs' property."[11]

The affidavit, presumably attached to the state court petition because it includes a case caption from the Sedgwick County District Court case, does not provide many more details. It is executed by John Foley, the owner of each of the Plaintiffs. It states the following: Mr. Foley was "unable to locate substantial funds belonging to Plaintiffs" that "were last in the possession of Defendant McDonald Standley Property Management Company;" that McDonald Standley Property Management Company was responsible for managing the property and its residents; Mr. Foley "discovered missing rent payments of approximately $180,000;"

---

[9] Doc. 20 Ex. A p. 2 ¶ 6.

[10] *Id.* ¶ 7.

[11] *Id.* ¶ 8, ¶ 9.

5

and Mr. Foley "became aware of $102,754.64 of paid invoices for work that was never completed" and those funds "were made out to MKN-IT-READY," a "repair company formerly owned by the mother of Kelly Standley, one of the Defendant's principals."[12]

And finally, the default judgment itself, entered on May 28, 2025, is very brief with few conclusions, summarizing only that the petition was filed, service was proper, and the defendants failed to appear or file a responsive pleading, and then concluding: "Defendants are in default, and Plaintiffs are entitled to judgment against such Defendants in the amount of $282,754.64 principal; for Plaintiffs' costs in the amount of $221.55; and for interest on the judgment at the judgment rate hereafter."[13] No additional findings or conclusions are made.

## II.    Procedural History

On September 4, 2025, Defendant filed a pro se Chapter 7 petition. In his supporting Schedules, Defendant disclosed a 100% interest in three different limited liability companies: MSI PWCA LLC, McDonald Standley Foundation LLC, and MKN-IT REDY LLC.[14] Defendant also disclosed a claim of $52,800 for wages he alleges were owed him and never paid and a claim of $102,754.64 owed to him by

---

[12] Doc. 20 Ex. B p. 2 ¶¶ 2-5.

[13] Doc. 20 Ex. C. p. 2.

[14] Case No. 25-10948, Doc. 2 p. 14. In his Statement of Financial Affairs, Defendant indicated both MSI PWCA LLC and McDonald Standley Foundation no longer exist as of October 1, 2024, and September 21, 2024, respectively. *Id.* Doc. 2 p. 57.

6

Kansas Condos LLC, Parsons Condominium LLC, and Prairie West Condominium LLC.[15]

Then in his disclosure of claims against him, Defendant disclosed a claim of $82,754.64 from a lawsuit from Central States Development LLC,[16] and claims of $100,000 from a lawsuit from Kansas Condos LLC[17] and Parsons Condominiums LLC.[18] In his Statement of Financial Affairs, Defendant disclosed the Sedgwick County lawsuit against him, Case No. SG-2025-CV-00274, indicating it was pending. As to Central States Development LLC, Defendant added he "[n]ever did any work" for that entity.[19] As to Parsons Condominiums, LLC, Defendant stated: "My former company operated properties, putting all money back into those properties by direction of the owner. Owner now wanting to get money from me he knows went into his property [sic throughout]."[20] And finally, as to Kansas Condos LLC, Defendant stated: "Owner told me to put his profit into the condos to fix them up for renting, now he wants that money back."[21]

On December 2, 2025, Plaintiffs Parsons Condominiums, LLC, Kansas Condos, LLC, and Central States Development, LLC, filed a complaint, initiating their adversary proceeding against Defendant. The complaint states three claims

---

[15] *Id.*, Doc. 2 p. 16-17.

[16] *Id.*, Doc. 2 p. 25.

[17] *Id.*, Doc. 2 p. 29.

[18] *Id.*, Doc. 2 p. 31.

[19] *Id.*, Doc. 2 p. 50.

[20] *Id.*

[21] *Id.*, Doc. 2 p. 51.

7

asserting nondischargeability, under § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6). Plaintiffs have now filed the motion for summary judgment currently under consideration, and Defendant responded. A pretrial order has been entered, and the proceeding is set for trial pending the decision on this motion.

On March 6, 2026, Defendant received a discharge in his Chapter 7 case.

### III.    Summary Judgment Standards

Summary judgment is appropriate where the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[22] In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the non-moving party.[23] Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[24]

When assessing a motion for summary judgment, the movant bears the burden to demonstrate there is no genuine dispute as to material facts,[25] and also

---

[22] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Rule 56 applies to this adversary proceeding via Fed. R. Bankr. P. 7056.

[23] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[25] *Id.* at 330. A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

8

has the burden to prove entitlement to judgment as a matter of law.[26] The non-moving party can avoid summary judgment if it identifies specific evidence that demonstrates there is a genuine dispute of material fact for trial, or if the undisputed facts do not establish a sufficient legal basis to grant the movant judgment as a matter of law.[27] If a party that bears the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial.[28]

The rules and procedure for summary judgment motions, as relevant here, are set forth in Fed. R. Civ. P. 56(c) and D. Kan. LBR 7056.1. Each statement of fact must be supported by citation to materials in the record and be "presented by affidavit, declaration under penalty of perjury, and/or through the use of relevant portions of pleadings, depositions, answers to interrogatories and responses to requests for admissions."[29] To controvert a fact, the respondent must also "refer

---

[26] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 322–23).

[27] Fed. R. Civ. P. 56(a). *See also Assessment Tech. Institute, LLC v. Parkes*, 588 F. Supp. 3d 1178, 1189 (D. Kan. 2022) ("To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate no reasonable trier of fact could find other than for the moving party." (internal quotation omitted)); *In re QuVis, Inc.*, 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (noting even if there are no disputed material facts, movant has burden to show those facts entitle movant to judgment as a matter of law).

[28] *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Celotex Corp.*, 477 U.S. at 322-23).

[29] D. Kan. LBR 7056.1(d). *See also* Rule 56(c)(1).

9

with particularity to those portions of the record on which the opposing party relies."[30]

Defendant's pro se status does not relieve him of the responsibility to follow these procedural requirements.[31] Because Defendant is pro se, Plaintiffs were required to serve and file a "Noice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" together with their motion for summary judgment.[32] Plaintiffs failed to file this Notice, but again, because Plaintiffs' motion states an insufficient basis for a nondischargeability finding as a matter of law in other ways, the procedural deficiency is immaterial.

## IV.    Analysis

### A.    Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over this nondischargeability adversary proceeding as a core proceeding arising under title 11,[33] and venue is proper.[34]

---

[30] D. Kan. LBR 7056.1(b)(1).

[31] *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 540 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotations and alterations omitted)).

[32] D. Kan. Rule 56.1(d).

[33] 28 U.S.C. §§ 1334(b), 157(b)(1), (2)(I) (a determination "as to the dischargeability of particular debts" is a core proceeding).

[34] 28 U.S.C. § 1409.

10

Exceptions to discharge are to be narrowly construed, with doubt being resolved in the debtor's favor.[35] The creditor seeking to except a debt from discharge bears the burden of proving each element of its claim by a preponderance of the evidence.[36]

**B.    Nondischargeability in General**

Plaintiffs argue the state court default judgment meets the elements of false pretenses and fraud under § 523(a)(2)(A), fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4), and willful and malicious injury under § 523(a)(6).

*1.    False Pretenses and Fraud*

Under § 523(a)(2)(A), a debtor cannot discharge debt "(2) for money . . . to the extent obtained by — (A) false pretenses, a false representation, or actual fraud." A plaintiff creditor can sustain a claim under this subsection by proving any one of these three categories: false pretenses, a false representation, or actual fraud. While the specific requirements of each may differ, a shared requirement of all three is the debtor's intent to defraud a creditor.[37]

---

[35] *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1361 (10th Cir. 1997). Bankruptcy's central purpose is to provide the honest debtor with a fresh start. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 366 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). Because of this principle, the exceptions to discharge should be narrowly construed. *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (B.A.P. 10th Cir. 2012).

[36] *Grogan,* 498 U.S. at 287-88.

[37] *Owens v. Yiannos (In re Yiannos)*, 673 B.R. 453, 479 (Bankr. D. Colo. 2025).

11

Plaintiffs' claim under § 523(a)(2)(A) is based on false pretenses or actual fraud. False pretenses are implied misrepresentations intended to create and foster a false impression, and this may include conduct and material omissions, as opposed to express misrepresentations.[38] Courts have defined false pretenses as "any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor."[39]

Plaintiffs also allege their claim satisfies the actual fraud standard of subsection (a)(2)(A).[40] Actual fraud occurs "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right."[41] It is different from "implied" fraud, or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality."[42] Anything that counts as "fraud" and is done with fraudulent intent is "actual fraud."[43]

Plaintiffs have not carried their burden to show either false pretenses or actual fraud under § 523(a)(2)(A). Even if the Court adopts in total Plaintiffs' statement of uncontroverted facts, there are simply no facts alleged which would show Defendant individually engaged in false pretenses or actual fraud. There is

---

[38] *Bank of Cordell v. Sturgeon (In re Sturgeon),* 496 B.R. 215, 223 (B.A.P. 10th Cir. 2013).

[39] *Id.*

[40] *Husky Int'l Elecs., Inc. v. Ritz,* 578 U.S. 355, 359 (2016) (finding that actual fraud is a distinct category under § 523(a)(2)(A) and can be proven without a false representation, such as a fraudulent conveyance).

[41] *Diamond v. Vickery (In re Vickery),* 488 B.R. 680, 691 (B.A.P. 10th Cir. 2013).

[42] *Husky Int'l Elecs.,* 578 U.S. at 360 (internal quotation omitted).

[43] *Id.*

12

nothing to show Defendant's intent to deceive Plaintiffs: the petition itself alleges only that the property management company was responsible for collecting rent and managing the properties at issue, that Plaintiffs could not locate their funds, and that the property management company refused to produce the funds. The petition then states that Plaintiffs believed both Defendant and the property management company "wrongfully appropriated" the money at issue, and that Defendant and the property management company committed a "conversion" of Plaintiffs' property. The affidavit adds that the money was last in the possession of the property management company and that some of the money was for missing rent and some was for invoices paid for work never completed by a different entity, a company formerly owned by Defendant's mother. And all the default judgment does is award judgment; it makes no factual findings other than regarding service of process and Defendant's failure to appear or respond.

Plaintiffs argue these things show "concealment and deception regarding the handling and disposition of collected rents and deposits" and that Defendant "has admitted to obtaining and misappropriating" the funds.[44] But a "wrongful appropriation"—as plead in the state court petition—is not the same thing as false pretenses or actual fraud. At most, the state court complaint pleads a claim for conversion. In Kansas, "[c]onversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the

---

[44] Doc. 20 p. 3-4.

13

exclusion of the other's rights."[45] Although a claim for conversion is an intentional tort,[46] as the Kansas Supreme Court has stated, "[t]he intent required is simply to use or dispose of the goods."[47]

A claim for conversion is not the same thing as a claim for fraud. Even if the state court petition had plead a claim for fraud, to contrast, in Kansas a claim for fraud requires a showing of: "[1] an untrue statement of fact, [2] known to be untrue by the party making it, [3] made with the intent to deceive or with reckless disregard for the truth, [4] upon which another party justifiably relies and [5] acts to his or her detriment."[48] Importantly, a claim for fraud in Kansas can be proven without proof of intent to deceive or defraud—it can be proven by the lesser "reckless disregard for the truth."

Further, the state court documents are unclear about Defendant's *individual* actions and intent, or even his connection to the property management company at

---

[45] *Bomhoff v. Nelnet Loan Servs., Inc.*, 109 P.3d 1241, 1246 (Kan. 2005). Both tangible and intangible personal property may be the subject of a claim for conversion. *Near v. Crivello*, 673 F. Supp. 2d 1265, 1281-82 (D. Kan. 2009) (reviewing Kansas case law on the issue and concluding "under Kansas law, intangible property rights may be subject to conversion, so long as there exists a present property interest"). There is no doubt that the property at issue here—rent and security deposit funds—can be the subject of a conversion claim. *See, e.g.*, *Com. Bank, N.A. v. Chrysler Realty Corp.*, 76 F. Supp. 2d 1113, 1118 (D. Kan. 1999), rev'd on other grounds, 244 F.3d 777 (10th Cir. 2001) ("An action for conversion can be maintained for conversion of cash or commercial paper."); *Bomhoff*, 109 P.3d at 1246 ("Checks can be converted.").

[46] *Snider v. MidFirst Bank*, 211 P.3d 179, 184 (Kan. Ct. App. 2009) (concluding claim for conversion, as an intentional tort claim, was not assignable).

[47] *Nelson v. Hy-Grade Const. & Materials, Inc.*, 527 P.2d 1059, 1062 (Kan. 1974). The "knowledge or ignorance of the actor as to their ownership [of the converted goods] has no influence in deciding the question of conversion." *Id.*

[48] *Bomhoff*, 109 P.3d at 1246 (internal quotation omitted).

14

issue. The state court petition concerns "McDonald Standley Investments, LLC d/b/a McDonald Standley Property Management Company." In Defendant's supporting Schedules to his bankruptcy petition, Defendant disclosed a 100% interest in three different limited liability companies: MSI PWCA LLC, McDonald Standley Foundation LLC, and MKN-IT REDY LLC. Although presumably Defendant is related in some way to the entity in the state court petition, his connection to the property management company is neither alleged, nor established.

And finally, even if Plaintiffs' § 523(a)(2)(A) claim did not fail based on the failure to show Defendant's intent to deceive, a claim under § 523(a)(2)(A) also requires a showing of justifiable reliance.[49] Justifiable reliance is a subjective standard that focuses on "the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than [applying] a community standard of conduct to all cases."[50] Again, there is no basis from which

---

[49] *Field v. Mans*, 516 U.S. 59, 74-75 (1995) ("we hold that § 523(a)(2)(A) requires justifiable, but not reasonable, reliance"). Although the Supreme Court in *Husky Int'l Elecs., Inc.*, concluded proof of reliance is not required to except a debt from discharge under § 523(a)(2)(A) based on actual fraud that is not an inducement-based fraud, 578 U.S. 355, 365-66 (2016), proof of reliance is required when the actual fraud at issue is an inducement-based fraud. *See Grange Ins. Assoc. v. Woods (In re Woods)*, 660 B.R. 905, 917 (B.A.P. 10th Cir. 2024) (analyzing the reliance issue as to actual fraud under § 523(a)(2)(A)). Because here the Court has no facts at all to flesh out Plaintiffs' claim of actual fraud, the Court cannot determine if the actual fraud alleged is an inducement-related fraud.

[50] *Id.* at 71.

15

the Court could conclude Plaintiffs had carried their burden of proof on this element.[51] Plaintiffs do not address this factor at all.

There is no basis upon which the Court could find the elements of a § 523(a)(2)(A) claim based on the state court petition, affidavit, or default judgment. Plaintiffs have not demonstrated they are entitled to judgment as a matter of law on their claim for nondischargeability under § 523(a)(2)(A).

### 2. *Fraud or Defalcation While Acting in a Fiduciary Capacity*

Under § 523(a)(4), a debtor cannot discharge debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Under this subsection, Plaintiffs must establish both a fiduciary relationship and fraud or defalcation committed in the course of that fiduciary relationship.[52]

The existence of a fiduciary relationship is "determined under federal law," although "state law is relevant to this inquiry."[53] In the Tenth Circuit, "to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor."[54] An "express or technical trust must be present" and "[n]either a general fiduciary duty of confidence, trust, loyalty, and good faith, . . . nor an inequality

---

[51] *See W.A. Johnson, Jr. v. Riebesell (In re Riebesell)*, 586 F.3d 782, 792 (10th Cir. 2009) (discussing justifiable reliance and noting a "plaintiff must 'use his senses' and at least make 'a cursory examination or investigation' of the facts of the transaction before entering into it" (quoting *Field*, 586 F.3d at 71)).

[52] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996).

[53] *Id.*

[54] *Id.*

16

between the parties' knowledge or bargaining power . . . is sufficient to establish a fiduciary relationship for purposes of dischargeability."[55]

Here, Plaintiffs argue Defendant was "acting in a fiduciary capacity in managing the properties on behalf of Plaintiffs," "assumed trust like and fiduciary obligations to safeguard and account for the funds," and then misappropriated the funds.[56] But there is no basis in the state court petition, affidavit, or default judgment for those conclusions. As discussed above, there is nothing from which the Court could find fraud. And regarding a fiduciary relationship, the petition itself alleges only that the property management company was responsible for collecting rent and managing the properties at issue, but that is insufficient to conclude an express or technical trust was established between Plaintiffs and Defendant. There are no facts alleged in the statement of uncontroverted facts from which the Court could find anything more than a general business relationship between the parties. Plaintiffs have not demonstrated they are entitled to judgment as a matter of law on their claim for nondischargeability under § 523(a)(4).

### 3. *Willful and Malicious Injury*

Section 523(a)(6) excepts debts for "willful and malicious injury by the debtor." This type of injury is akin to intentional torts,[57] and negligent or reckless

---

[55] *Id.* at 1371-72.

[56] Doc. 20 p. 4.

[57] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("[T]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts.").

17

conduct is insufficient.[58] Proof of both a willful act and a malicious injury are required to establish the claim.[59] "For an injury to be 'willful,' there must be a deliberate or intentional injury, not merely 'a deliberate or intentional act that leads to injury.'"[60] "For an injury to be 'malicious,' 'evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.'"[61] Malicious behavior is both intentional and wrongful.[62]

Here, Plaintiffs state, without elaboration, that Defendant's "misappropriation of the funds was willful and malicious, injuring Plaintiffs' property rights without just cause or excuse."[63] Plaintiffs do not attempt to show a deliberate or intentional injury by Defendant or any evidence of Defendant's motives or malice. As noted above, the only fact that could be established by the state court petition is wrongful appropriation. As a result, neither the willful nor malicious elements can be presumed from the underlying state court petition and

---

[58] *Id.* at 64.

[59] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("The district court overlooked the criticality of the terms 'willful' act and 'malicious injury' in § 523(a)(6). Without proof of *both*, an objection to discharge under that section must fail.").

[60] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (B.A.P. 10th Cir. 2020) (quoting *Kawaauhau*, 523 U.S. at 61).

[61] *Id.* at 919 (quoting *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993)).

[62] *Nelson v. Bolles (In re Bolles)*, 593 B.R. 832, 843 (Bankr. D.N.M. 2018) ("For a debtor's actions to be malicious, it must be intentional, wrongful, and done without justification or excuse.").

[63] Doc. 20 p. 4.

18

default judgment. Plaintiffs have not demonstrated they are entitled to judgment as a matter of law on their claim for nondischargeability under § 523(a)(6).

## V. Conclusion

The summary judgment record demonstrates Plaintiffs failed to carry their burden entitling them to judgment as a matter of law on their claim for nondischargeability under § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6), even if the Court considers the underlying state court petition, affidavit, and default judgment. Plaintiffs' motion for summary judgment[64] is denied.

This proceeding remains set for trial on August 25, 2026, at 1:30 p.m.

**It is so ordered.**

# # #

---

[64] Doc. 19.

19